**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| LONG HORIZON TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>NOKIA CORPORATION and NOKIA OF AMERICA CORPORATION,<br><br>Defendants. | ) | Case No. 2:26-cv-00<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Long Horizon Technologies LLC ("Long Horizon" or "Plaintiff") for its Complaint against Defendants Nokia Corporation and Nokia of America Corporation (collectively, "Nokia" or "Defendants"), for patent infringement alleges as follows:

## THE PARTIES

1. Long Horizon is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 104 East Houston Street, Marshall, TX 75670.

2. On information and belief, Defendants Nokia Corporation is a corporation organized and existing under the laws of Finland, with its principal place of business located at Karakaari 7, 02610, Espoo, Finland. On information and belief, Nokia Corporation does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

3. On information and belief, Defendant Nokia of America Corporation a corporation organized and existing under the laws of the State of Delaware, with its U.S. Headquarters at 3201 Olympus Boulevard, Dallas, Texas 75019. On information and belief, Nokia of America

Corporation does business in Texas and in the Eastern District of Texas, directly or through intermediaries.

4. On information and belief, Nokia sells, offers to sell, uses, and/or provides products and services throughout the United States, including in this District, and introduces products and services incorporating the accused technology, including but not limited to the Accused Products (defined below), into the stream of commerce knowing they would be sold and used in this District and elsewhere in the United States. For example, and without limitation, on information and belief, Nokia conducts business in this District at least through one of its major distribution centers located at 2525 Highway 121, Lewisville, TX, 75056-5006.[1]

5. Moreover, on information and belief, Nokia has additional regular and established places of business in this District, such as a Nokia facility in Plano, Texas that has been used as a training center and a data center also located in Plano, Texas.[2]

## **JURISDICTION**

6. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has specific and personal jurisdiction over Defendants consistent with

---

[1] *See* https://www.nokia.com/contact-us/worldwide-offices/north-america/ (last accessed on October 29, 2026).

[2] *See IPCom, Gmbh & Co. KG v. AT&T Corp*., Defendant, and Nokia of Am. Corp., Intervenor, 2:20-cv-00322-JRG, Dkt. No. 47, ¶¶ 61-63 (Nokia admitting that "it conducts business operations within the Eastern District of Texas" including a "Nokia facility in Plano, Texas" and "a data center in Plano."); *see also Radiant Patents LLC v. Nokia Corporation, et al.*, 2:26-cv-00074-RWS, Dkt. No. 19, ¶¶ 4-9 (E.D. Tex. May 1, 2026) (Nokia admitting that "[Nokia of America Corporation] conducts business in the Eastern District of Texas and has a distribution center at 2525 South Highway 121, Lewisville, Texas 75056[,]" that there is a "[Nokia of America Corporation] facility in Plano, Texas[,]" and that "[Nokia of America Corporation] has a data center in Plano, Texas.").

the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendants have sufficient minimum contacts with the forum because Defendants transact substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed and continue to commit acts of patent infringement in the State of Texas and in this Judicial District. Moreover, Nokia is registered to do business in the State of Texas, has offices and facilities in the State of Texas, including but not limited to a major distribution center located at 2525 Highway 121, Lewisville, TX, 75056-5006, and a facility and data center in Plano, Texas, and actively directs its activities to customers located in the State of Texas, and engages in other persistent courses of conduct in and derives substantial revenue from each of its business activities in this District.

8. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) because Nokia has committed and continues to commit acts of infringement within this District giving rise to this action and maintains a regular and established place of business in this District. Nokia has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling, and/or using products and/or services that infringe the Asserted Patents including the Accused Products in this District. Nokia is registered to do business in the State of Texas, has offices in the State of Texas, and upon information and belief, has transacted business in this District and has committed acts of direct and indirect infringement in this District. Nokia maintains a regular and established place of business in this District, including at least through one of its major distribution centers located at 2525 Highway 121, Lewisville, TX, 75056-5006 as well as its facility in Plano, Texas and its data center also located in Plano, Texas.

9. Venue is proper over Nokia Corporation in this District pursuant to at least 28

U.S.C. § 1391(c). Nokia Corporation is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

10. Moreover, Defendants have not contested or admitted to proper venue in this District in previous matters brought in this District.[3]

11. In addition, or in the alternative, this Court has personal jurisdiction over Nokia Corporation pursuant to Fed. R. Civ. P. 4(k)(2).

12. Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to their substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

## PATENTS-IN-SUIT

13. On August 4, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,733,021 (the "'021 Patent") entitled "System of Cloud Computing and Method for Detaching Load in Cloud Computing System." A true and correct copy of the '021 Patent is attached hereto as Exhibit A.

14. On May 5, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,738,894 (the "'894 Patent") entitled "Methods for Firmware Signature" A true and correct copy of the '894 Patent is attached hereto as Exhibit B.

15. Long Horizon is the sole and exclusive owner of all right, title, and interest in the '021 Patent and the '894 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and

---

[3] *See Radiant Patents LLC*, 2:26-cv-00074-RWS, Dkt. No. 19, ¶¶ 8-9 (E.D. Tex. May 1, 2026) (Nokia not contesting that venue is proper to Nokia of America Corporation and Nokia Corporation in the Eastern District of Texas).

holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Long Horizon also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit and to seek injunctive relief as appropriate under the law.

16. Long Horizon has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

17. The ’021 Patent generally relates to systems and methods for distributing cloud-computing workloads. The technology described in the ’021 Patent was developed by Eui Nam Huh, Yunkon Kim, Jun Young Byun. By way of example, this technology is implemented core, regional, and edge clouds to reduce network load and improve the speed and efficiency of providing cloud services to client devices.

18. The ’894 Patent generally relates to methods for installing embedded firmware. The technology described in the ’894 Patent was developed by inventors Brian A. Batke, Jack M. Visoky, James J. Kay, Scott A. Mintz, and William B. Cook. By way of example, this technology is implemented methods that associate one or more digital certificate instances with one or more firmware file instances to update or facilitate the update of signature-unaware modules with signature-aware firmware.

19. Nokia has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products that infringe the Patents-in-Suit.

## COUNT I
**(Infringement of the ’021 Patent)**

20. Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

21. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’021 Patent.

22. Defendants have and continue to directly infringe the ’021 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’021 Patent. Such products include, but are not limited to, Nokia MX Industrial Edge (MXIE); Nokia Digital Automation Cloud (DAC); DAC management and application-catalog functionality; Nokia Industrial Device Management; Nokia Integrated Operations Center; Nokia Team Comms and other Nokia industrial Edge Apps; Nokia MX Workmate; Nokia Network Digital Twin; Nokia industrial connectors; and current Nokia private-wireless and industrial-digitalization configurations combining DAC, MXIE, locally executing industrial applications, and connected industrial devices, among other Nokia products.

23. For example, Defendants have and continue to directly infringe at least claim 10 of the ’021 Patent by making, using, offering to sell, selling, and/or importing into the United States Nokia MX Industrial Edge (“MXIE”), in operation with the Nokia Digital Automation Cloud (“DAC”) and locally executing industrial applications. The Nokia MXIE is exemplary of how the other Nokia products accused herein to infringe the ’021 Patent.

24. For example, the Nokia MXIE performs a method of detaching load in a cloud computing system comprising a cloud server configured to provide a cloud service and a client terminal configured to request or be provided with the service, the cloud server and the client terminal connected over a particular network (e.g., Nokia DAC and MX Industrial Edge infrastructure, Edge Apps, and connected industrial and/or user devices communicating over

private wireless, local, and/or IP networks).

25. The Nokia MXIE performs step no. 1 of arranging an edge cloud on a network node connected to the client terminal, the edge cloud formed with a particular cloud server (e.g., deploying MX Industrial Edge as an on-premises edge-computing platform proximate to connected industrial devices and applications)

26. The Nokia MXIE performs step no. 2 of determining whether or not identification is possible for a cloud service request signal transmitted from a publisher client terminal among the client terminals at the edge cloud (e.g., MXIE/DAC device-discovery, provisioning, authentication, access-control, networking, and application-exposure functionality identifying and/or authenticating a device, application, user, or associated request).

27. The Nokia MXIE performs step no. 3-1 of providing a cloud service corresponding to the request signal to a subscriber client terminal wishing to receive the cloud service if the cloud service corresponding to the request signal is being operated at a cloud server of the edge cloud, if it is determined in said step no. 2 that identification is possible for the request signal (e.g., routing an identified request to an industrial application deployed and executing locally on MXIE and providing the corresponding local edge service).

28. The Nokia MXIE performs step no. 3-2 of transmitting the request signal to a core cloud connected to a cloud server and formed with a particular cloud server, if it is not determined in said step no. 2 that identification is possible for the request signal or if the cloud service corresponding to the request signal is not being operated at the cloud server of the edge cloud (e.g., transmitting requests and/or associated service data from MXIE toward DAC, public/private cloud infrastructure, or northbound enterprise systems when processing is not performed locally).

29. The Nokia MXIE performs step no. 4-1 of, determining whether the edge cloud that

has transmitted the request signal is connected to the subscriber client terminal (e.g., DAC/MXIE networking and device-management functionality determining and/or maintaining the connection, registration, or session state of a connected industrial or subscriber device), and transmitting a backward packet to the edge cloud that has transmitted the request signal based on the determining whether the edge cloud that has transmitted the request signal is connected to the subscriber client terminal (e.g., transmitting responsive service and/or network traffic back through MXIE based on the connected client's network and/or session state).

30. The Nokia MXIE performs step no. 4-2 of identifying the request signal and providing the cloud service corresponding thereto to the subscriber client terminal (e.g., processing the forwarded request at higher-level DAC/cloud infrastructure and providing corresponding service information or traffic to the requesting client through the edge infrastructure).

31. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Nokia has used the Accused Products in a manner that directly infringes at least the method claims of the ’021 Patent.

32. Defendants have and continue to indirectly infringe one or more claims of the ’021 Patent by knowingly and intentionally inducing others, including Nokia customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

33. Defendants, with knowledge that these products, or the use thereof, infringe the ’021 Patent at least as of the date of this Complaint, have knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’021 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing

their employees and agents not to review the patents of other, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '021 Patent at least as early as the issuance of the '021 Patent.

34. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '021 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications, including the documents cited herein.

35. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '021 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '021 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '021 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially made or adapted for use in the infringement of the '021 Patent. Defendants perform these affirmative acts with knowledge of the '021 Patent and with intent, or willful blindness, that they cause the direct infringement of the '021 Patent.

36. Long Horizon has suffered damages as a result of Defendants' direct and indirect infringement of the '021 Patent in an amount to be proven at trial.

37. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '021 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the '894 Patent)**

38. Paragraphs 1 through 19 are incorporated by reference as if fully set forth herein.

39. Long Horizon has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '894 Patent.

40. Defendants have and continue to directly infringe the '894 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '894 Patent. Such products include, but are not limited to, Nokia 7250 Interconnect Router platforms, 7220 Interconnect Router platforms, 7730 Service Interconnect Router platforms, and other current Nokia IP-routing platforms implementing field-enabled Secure Boot and secure firmware-update functionality, among other Nokia products.

41. For example, Defendants have and continue to directly infringe at least claim 1 of the '894 Patent by making, using, offering to sell, selling, and/or importing into the United States, such as the Nokia SR Linux/SR OS router implementing field-enabled Secure Boot. The Nokia 7250 Interconnect Router (IXR) is exemplary of how the other Nokia products accused herein infringe the '894 Patent.

42. For example, the Nokia 7250 Interconnect Router (IXR) performs a method that receives, by a first device, signature unaware firmware code (e.g., a Secure Boot-capable Nokia

router, including the Nokia 7250 Interconnect Router (IXR), receiving firmware in a pre-Secure-Boot or legacy update configuration in which signature enforcement has not yet been activated); installing, by the first device via boot code, the signature unaware firmware code on the first device (e.g., platform/UEFI firmware and associated boot/update functionality installing or activating firmware before Secure Boot enforcement is enabled), wherein the boot code is configured for installation of a signature aware firmware code and the signature unaware firmware code to the first device (e.g., Secure Boot-capable platform firmware supporting firmware operation/update before Secure Boot activation and signed-firmware verification after activation), wherein the installing the signature unaware firmware code further comprises verifying, via at least one feedback mechanism, that the signature unaware firmware code is received from a second device associated with a user that has physical access to the first device (e.g., secure-update/activation functionality using device-specific card/serial information and confirmation information supplied by an administrator).

43. Through demonstrations, testing, repairs, troubleshooting, training, and instructional guidance, Nokia has used the Accused Products in a manner that directly infringes at least the method claims of the ’894 Patent.

44. Defendants have and continue to indirectly infringe one or more claims of the ’894 Patent by knowingly and intentionally inducing others, including Fortinet customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

45. Defendants, with knowledge that these products, or the use thereof, infringe the ’894 Patent at least as of the date of this Complaint, have knowingly and intentionally induced,

and continue to knowingly and intentionally induce, direct infringement of the '894 Patent by providing these products to others for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their employees and agents not to review the patents of other, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '894 Patent at least as early as the issuance of the '894 Patent.

46. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '894 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by its customers, partners, and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications, including the documents cited herein.

47. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '894 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants' affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products such that the '894 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '894 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be specially

made or adapted for use in the infringement of the ’894 Patent. Defendants perform these affirmative acts with knowledge of the ’894 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’894 Patent.

48. Long Horizon has suffered damages as a result of Defendants’ direct and indirect infringement of the ’894 Patent in an amount to be proven at trial.

49. Long Horizon has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’894 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Long Horizon prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Long Horizon for Defendant’s infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Long Horizon its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: October 29, 2026

Respectfully submitted,

*/s/ John Andrew Rubino*

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Road, Suite 206 South
Rye, NY 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF,***
***LONG HORIZON TECHNOLOGIES LLC***